**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OKLAHOMA**

| | |
|---|---|
| **I.P.I.C., GSP, S.L.,** | ) |
|           **Plaintiff,** | ) |
| v. | ) Case No. 08-CV-0510-CVE-PJC |
| **RUHRPUMPEN, INC., and** | ) |
| **CORPORACIÓN EG de S.A. de C.V.,** | ) |
|           **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court is the Combined Motion to Dismiss and Brief in Support filed by defendant Ruhrpumpen, Inc.[1] (Dkt. # 12). Ruhrpumpen Inc. ("RPI") moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). RPI argues that plaintiff has failed to allege sufficient facts to state a claim upon which relief may be granted. Plaintiff responds that it has stated claims against RPI, which should not be dismissed. In the alternative, plaintiff asks for leave to amend the complaint.

**I.**

Defendant, Ruhrpumpen, Inc. ("RPI") is a United States subsidiary of Corp EG, a corporation organized in Mexico. Dkt. # 12. RPI is a Delaware corporation with its principal place of business in Tulsa, Oklahoma. Dkt. # 2, at 1. RPI develops and manufactures industrial pumps for distribution in North America. Id. Corp EG is a global supplier of industrial pumps for "refineries, petrochemical plants and other industrial applications." Id. Corp EG is also the parent company of Ruhrpumpen GmbH, a German corporation. Id. at 2. Plaintiff, I.P.I.C. GSP, S.L.

---

[1] To date, there is no return of service filed for defendant Corporación EG S.A. de C.V. ("Corp EG").

("IPIC"), is a Spanish corporation with its principal place of business in Alicante, Spain. Id. at 1. On or about June 1, 2002, IPIC entered into a Representative Agreement (the "2002 Agreement") with Ruhrpumpen GmbH in which IPIC was appointed as the exclusive sales agent for Ruhrpumpen GmbH in Spain. Id. at 1, 2. Pursuant to the 2002 Agreement, IPIC was to solicit sales contracts and procure orders for Ruhrpumpen products throughout the region. Id. at 3. IPIC was to receive a commission of 7.5% for new pumps, 2.5% for accessories, and 10% for spare parts. Id. Plaintiff alleges that, shortly after signing the 2002 Agreement and despite the fact that its contract was with Ruhpumpen GmbH, it was directed to communicate with the Ruhrpumpen office in London with respect to all purchase orders generated from Spanish customers. Id. Plaintiff further alleges that the London office was "affiliated" with RPI rather than Ruhrpumpen GmbH. Id.

     Plaintiff alleges that Cesar A. Elizondo Garza and his family owned a controlling interest in Corp EG, including Ruhrpumpen GmbH and RPI. Id. at 3. In 2003, IPIC learned that Petroleos Mexicanos was preparing to issue a tender for a construction project in Minatitlan, Veracruz, Mexico (the "Minatitlan Project"). Id. at 4. At the time, IPIC was in communication with two Spanish contractors, Dragados Industrial ("Dragados") and Tecnicas Reunidas ("Tecnicas"), regarding their needs for upcoming construction projects. Id. In 2004, IPIC learned that Dragados and Tecnicas intended to bid on the Minatitlan Project and began promoting the Ruhrpumpen products to both companies. Id. While IPIC initially communicated with the London office with respect to the Minatitlan Project, he was eventually directed to forward customer inquiries to Marcelo A. Elizondo, Cesar A. Elizondo Garza's brother. Id. On May 5, 2005, Elizondo sent IPIC a letter stating that any purchase orders received in connection with the Minatitlan Project would be filled not by Ruhrpumpen GmbH, but instead Corp EG would fill the orders using pumps

manufactured by other Corp EG subsidiaries.[2]  Id. at 5.  Elizondo stated that Corp EG "holds the exclusive rights to nominate sales representatives for all the Ruhrpumpen companies in our family of companies."  Id.  Elizondo informed IPIC that he would withhold all related commission payments pertaining to the 2002 Agreement on the grounds that it covered only products manufactured by Ruhrpumpen GmbH.  Id.  However, in light of IPIC's work to secure orders from Dragados and Tecnicas on the Minatitlan Project, Elizondo agreed to pay IPIC a 1.5 % commission for new equipment and systems manufactured by Ruhrpumpen.  Id.  Plaintiff alleges that after it received the letter from Elizondo, Elizondo communicated with IPIC orally and via e-mail, and stated that Corp EG and its subsidiaries would not complete bids with Dragados and Tecnicas for the Minatitlan Project unless IPIC agreed to accept the reduced commission.  Id.  According to plaintiff, this demand for IPIC to accept a reduced commission was received hours before the bids were due.  Id.  IPIC agreed to the reduced commission and signed and returned the new agreement (the "2005 Agreement").  Id. at 6.  IPIC continued to work with Dragados and Tecnicas and both companies ultimately placed orders with Corp EG for pumps to be used on the Minatitlan Project.  Id.  Plaintiff alleges that, "upon information and belief," some of the pumps for this order were "designed or manufactured with assistance from [RPI] in its facilities in Tulsa, Oklahoma."  Id.

In June 2005, IPIC received notification from Ruhrpumpen GmbH that it was terminating the 2002 Agreement, effective September 30, 2005.  Id.  According to IPIC, other sales agents in Spain began to solicit contacts for Ruhrpumpen, despite the fact that the 2002 Agreement was to

---

[2]   RPI has filed a copy of this letter along with its motion to dismiss. Dkt. # 12-2.  While generally on a Rule 12(b)(6) motion, matters outside the pleadings may not be considered, the district court may consider a document referred to in the complaint which is central to the plaintiff's claim, without converting the motion to one under Federal Rule of Civil Procedure 56.  See Alvarado v. KOB-TV, LLC, 493 F. 3d 1210, 1215 (10th Cir. 2007).

remain in effect until the end of September 2005. Id.  IPIC requested payment of outstanding commissions, but those commission were not paid. Id. at 7.

IPIC filed a complaint (Dkt. # 2) in this Court on September 4, 2008, asserting the following claims for relief: (1) breach of contract against Corp EG; (2) quantum meruit against both defendants; (3) unjust enrichment against both defendants; and (4) request for an accounting as to both defendants. Id. at 8.

## II.

In considering a motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The claim must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). When deciding whether to grant a motion to dismiss, a court must accept all the well-pleaded allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado, 493 F.3d at 1215; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). Nonetheless, a court need not accept as true those allegations which are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient

to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 127 S. Ct. at 1974.

### III.

This is an action for breach of a sales representative contract; it is not an action for defective design or manufacture of industrial pumps. Plaintiff sets forth the following claims against RPI: (1) quantum meruit; (2) unjust enrichment; and (3) request for accounting. As a general matter, plaintiff is correct that it is entitled to plead alternative theories of relief. Pursuant to Federal Rule of Civil Procedure 8(e)(2), a party may "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable or maritime grounds." Although a party may not recover twice on the basis of the same injury, he may plead an equitable claim in addition to a legal claim. See In re General Motors Corp., "Piston Slap" Products Liability Litigation, 386 F. Supp. 2d 1220, 1224 (W.D. Okla. 2005). However, plaintiff must have a cognizable claim on each theory to survive a motion to dismiss. Here, the specific factual allegation against RPI that is clearly relevant to plaintiff's claims is limited to the following: "Upon information and belief, certain of the pumps installed in connection with the Minatitlan Project were designed or manufactured with assistance from [RPI] in its facilities in Tulsa, Oklahoma." Dkt. # 2, at 6. This single factual averment clearly falls short of what is required to survive a motion to dismiss. See Hall, 935 F. 2d at 1110 (pro se litigant's conclusory allegations were insufficient to state a claim upon which relief could be granted). Nonetheless, plaintiff's claims against RPI will each be addressed in turn.

**A.     Quantum Meruit**

Generally speaking, "quantum meruit is applied where a plaintiff renders valuable services benefiting a defendant under circumstances where the defendant was reasonably notified the plaintiff expected to be paid or where it would be unjust for the defendant to retain the benefit without paying." Sholer v. State ex rel. Dept. of Public Safety, 149 P. 3d 1040, 1048 (Okla. 2006) (citations omitted). Plaintiff alleges that RPI benefited from the purchase orders IPIC secured, but never paid the commission it owed to plaintiff. Plaintiff argues that it "performed services for Defendants by promoting the Ruhrpumpen range of products and procuring purchase orders in connection with the Minatitlan Project with the reasonable expectation of being compensated." Dkt. # 16, at 7. To support its claim, plaintiff relies heavily on its allegation that some of the pumps installed in connection with the Minatitlan Project may have been "designed or manufactured with assistance from RPI in in its facilities in Tulsa, Oklahoma." Dkt. # 16, at 7. However, regardless of where some of the pumps were manufactured or designed, plaintiff must allege that RPI was benefited and was reasonably notified of plaintiff's expectation of payment. There are no allegations in the complaint or otherwise claiming that plaintiff had any direct contact with any representative of RPI with respect to the Minatitlan Project.[3] Similarly, there is nothing in the complaint to suggest that either Ruhrpumpen GmbH, or Elizondo ever communicated with RPI with respect to IPIC's work for Ruhrpumpen GmbH and Corp EG. The May 2005 letter from Elizondo to IPIC (Dkt. # 12-2) does not contain a single reference to RPI.

---

[3]     Plaintiff alleges that the Ruhrpumpen London office was "affiliated" with RPI. Dkt. # 2, at 3. However, plaintiff's claims are based on commissions allegedly owed on the Minatitlan Project and plaintiff does not allege that it worked with the London office on that project. Accordingly, RPI's possible affiliation with the London office is not relevant to the specific claims alleged.

Plaintiff seems to be arguing that RPI benefited generally from the sale of Ruhrpumpen products and thus is entitled to relief on the basis of quantum meruit. However, without any specific factual allegations, plaintiff cannot state a claim for quantum meruit upon which relief may be granted.

**B.      Unjust Enrichment**

Under Oklahoma law, unjust enrichment "describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable." Lapkin v. Garland Bloodworth, Inc., 23 P.3d 958 (Okla. Civ. App. 2000). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." N.C. Corff Partnership, Ltd. v. OXY USA, Inc., 929 P.2d 288, 295 (Okla. Civ. App. 1996). See also Clay v. Independent School Dist. No. 1 of Tulsa Cty., 935 P.2d 294, 301 n. 11 (Okla. 1997); French Energy Inc. v. Alexander, 818 P.2d 1234, 1237 (Okla. 1991). Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief. Harvell v. Goodyear Tire and Rubber Co., 164 P.3d 1028, 1035 (Okla. 2006). Nonetheless, a party may allege an equitable claim as an alternative to a contract-based claim, so long as the party is not

permitted double recovery on the same injury.[4]  See Burlington Northern and Santa Fe Ry. Co. v. Grant, 505 F.3d 1015, 1030 (10th Cir. 2007) (citing N.C. Corff P'ship, Ltd., 929 P.2d at 295).

Here, plaintiff argues that because RPI may have manufactured or designed some of the pumps used for the Minatitlan Project, it unjustly benefited from IPIC's efforts in securing that contract.  However, as noted above, plaintiff merely concludes that RPI benefited from its work and offers no factual averments in support of that allegation.  Accordingly, plaintiff cannot state a claim for unjust enrichment upon which relief may be granted.

**C.     Request for Accounting**

Under Oklahoma law, a request for accounting or an "equitable accounting" is a "proceeding to adjust mutual accounts and strike a balance."  See Whitehorse v. Johnson, 156 P. 3d 41, 45 (Okla. 2007) (citations omitted).  A claim for an equitable accounting is sufficient if it alleges "(1) a confidential relationship; (2) the defendant had control over another's property and records concerning the property; (3) after a demand for an accounting defendant did not account or return the property; and (4) there was no adequate remedy at law."  Howell Petroleum Corp. v. Leben Oil Corp., 976 F. 2d 614, 620 (Okla. 1992).  In addition, plaintiff must show that a balance is due in order to establish the right to an accounting.  Id.

---

[4]    RPI argues that plaintiff should not be permitted to pursue quasi-contractual claims because it also has a breach of contract claim against Corp EG.  However, plaintiff's contract-based claims are asserted against Corp EG and not against RPI.  It is not inconsistent for plaintiff to assert a quasi-contractual claim against RPI since it does not also assert a breach of contract claim against this defendant. Moreover, pursuant to Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out two or more statements of a claim . . . alternatively . . . either in a single count . . . or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Plaintiff argues that it is requesting an equitable accounting "for purposes of determining the amount of compensation it has earned as the sales agent for [Corp EG] and RPI in connection with the Minatitlan Project." Dkt. # 16, at 8. However, there is nothing contained within the pleadings to suggest that IPIC can state a claim for an equitable accounting. Plaintiff does not allege that IPIC and RPI had a confidential relationship; in fact, there is nothing to indicate that IPIC and RPI had any relationship at all beyond RPI's possible design or manufacture of some of the pumps used on the Minatitlan Project. With respect to the second and third requirements for an equitable accounting, plaintiff does not allege that RPI maintained control over any records, property, or accounts relating to IPIC, nor does plaintiff allege that RPI refused to account for or turn over plaintiff's property after a demand was made. Finally, plaintiff does not allege that there is no adequate remedy at law. In addition, plaintiff has not alleged that RPI owes IPIC a balance. The pleadings make clear that the agreements for commission payments were between IPIC and Corp EG or Ruhrpumpen GmbH; any balance due to IPIC is owed by one of those entities, not by RPI. Accordingly, because plaintiff has not stated a claim against RPI, RPI's motion to dismiss should be granted.[5]

---

[5] In its response, plaintiff requests leave to amend the complaint in the event that RPI's motion to dismiss is granted. However, plaintiff states no additional factual allegations that it would be prepared to make that could correct the deficiencies in plaintiff's claims against RPI. While leave to amend shall be freely given, see Fed. R. Civ. P. 15(a), the Court need not grant leave where amendment would be futile. See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Accordingly, if plaintiff can make any factual allegations regarding RPI's involvement in this matter, other than RPI's possible design or manufacture of the pumps used in the Minatitlan Project, plaintiff may file a motion for leave to amend the complaint with a proposed amended complaint attached as an exhibit.

**IT IS THEREFORE ORDERED** that Defendant RPI's Combined Motion to Dismiss and Brief in Support (Dkt. # 12) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff may file a motion for leave to amend the complaint within fifteen (15) days of this order if it can cure the deficiencies discussed herein.

**DATED** this 4th day of December, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT