UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **I.P.I.C., GSP, S.L.,**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| v.  ) | Case No. 08-CV-0510-CVE-PJC |
| ) | |
| **RUHRPUMPEN, INC., and**  ) | |
| **CORPORACIÓN EG S.A. de C.V.,**  ) | |
| ) | |
| **Defendants.**  ) | |

## OPINION AND ORDER

Now before the Court is Defendant Corporación EG S.A. de C.V.'s Motion to Dismiss and Brief in Support (Dkt. # 38). Corporación EG S.A. de C.V. (Corp EG) moves to dismiss plaintiff I.P.I.C., GSP, S.L.'s (IPIC) first amended complaint pursuant to the doctrine of <u>forum non conveniens</u> and for lack of personal jurisdiction. IPIC brought suit against Ruhrpumpen, Inc. (RPI) and Corp. EG. IPIC's first amended complaint[1] (Dkt. # 21) states claims for breach of contract against Corp. EG only, and quantum meruit and unjust enrichment against both defendants. The Court conducted an evidentiary hearing on the <u>forum non conveniens</u> aspect of the motion to dismiss on December 14, 2009.

**I.**

IPIC is a Spanish company with its principal place of business in Alicante, Spain. Dkt. # 21, at 1. H.D. Mottahedeh (Mottahedeh) is IPIC's Managing Director. Dkt. # 46, at 25. Corp. EG is a Mexican company with its sole place of business in Monterrey, Mexico. Dkt. # 38-2, at 1. Corp.

---

[1] The Court dismissed claims against RPI in IPIC's original complaint under Fed. R. Civ. P. 12(b)(6) (Dkt. # 18). The Court granted IPIC leave to amend its complaint (Dkt. #20) and then denied RPI's motion to dismiss the first amended complaint (Dkt. # 29).

EG supplies industrial pumps and is the parent company of several subsidiaries, including: RPI, a Delaware corporation with its principal place of business in Tulsa, Oklahoma; Worthington de Mexico S.A. de C.V. n/k/a Ruhrpumpen S.A. de C.V. (WDM), a Mexican company; and Ruhrpumpen, GmbH (RPG), a German company. Id. RPI develops and manufactures pumps for distribution in the United States and abroad. Dkt. # 21, at 1; Dkt. # 30, at 1. Marcelo A. Elizondo Garza (Elizondo) is an agent of Corp. EG, Dkt. # 38-2, at 1, and allegedly its president and a controlling shareholder. Dkt. # 21, at 5. Elizondo was also RPI's Marketing and Procurement Manager during Spring 2005. Dkt. # 38-2, at 3.

This dispute originated with a contract between IPIC and RPG, the German subsidiary of Corp. EG. On June 1, 2002, IPIC and RPG entered into a representative agreement designating IPIC as RPG's sales agent in Spain.[2] IPIC alleges that, shortly before the representative agreement was signed, IPIC was told that all purchase orders from Spanish customers would be processed through the newly-opened London Ruhrpumpen office, and not through RPG. Dkt. # 21, at 4. IPIC further alleges that this London office was "affiliated" with Tulsa-based RPI, rather than RPG, and thus that IPIC was "regularly submitting sales leads to . . . RPI." Id. IPIC alleges that, "in most instances, IPIC was not advised regarding which affiliate or subsidiary of [Corp. EG] was actually filling a particular sales order." However, as it was receiving its commissions without incident, IPIC did not object. Id. at 4-5.

---

[2]   At the hearing, IPIC's counsel stated that IPIC was not making any claims under this 2002 agreement.

In 2003, Petrolos Mexicanos (Pemex), Mexico's state-owned petroleum company, announced plans to expand a refinery in Minatitlán, Veracruz, Mexico (the Minatitlán project).[3] Dkt. # 38-2, at 2. IPIC alleges that, during this time, it was in regular communication with two Spanish contractors regarding their industrial pump needs, including "products offered by [RPG] and the other Ruhrpumpen affiliates." Dkt. # 21, at 5. In Spring 2004, IPIC was notified that the Spanish contractors were planning to bid on the Minatitlán project, and began "actively promoting the Ruhrpumpen line of products." Id. IPIC alleges that it initially communicated with the London office,[4] but was later directed to communicate directly with Elizondo "at RPI." Id. In 2005, Mottahedeh and Elizondo met in Spain.

By letter dated May 5, 2005, Elizondo informed IPIC that its current commission arrangement covered sales of RPG products only, and offered to enter into a one-time sales representation arrangement for all Ruhrpumpen entities and the Minatitlán project.[5] Dkt. ## 12-2; 46, at 27-29. The letter was sent via e-mail from Elizondo's RPI e-mail account. Elizondo declares that "it is possible that I was in Tulsa on the day the e-mail was sent." Dkt. # 38-2, at 3. The letter is on Corp. EG letterhead. Dkt. # 12-2. IPIC returned a signed copy of the letter (after alleged

---

[3] At the hearing, the parties also referred to the Mina Trico project, which is related to the Minatitlán project. The term "Minatitlán project" includes both Minatitlán and Mina Trico.

[4] At the hearing, Mottahedeh testified that the sales director of RPG told him that Gareth Pemberton of RPI in London would be covering Spain as a regional sales manager. Elizondo testified that Pemberton resigned before any pumps were made in connection with the Minatitlán project.

[5] Elizondo also asked Mottahedeh to enter into a global agreement to represent all Ruhrpumpen companies. No such agreement was formed.

3

threats by Elizondo "on behalf of [Corp. EG] and [RPI]," on May 9, 2005, with exceptions noted.[6] Mottahedeh testified that Elizondo never advised Mottahedeh that Corp. EG accepted the letter with Mottahedeh's exceptions.

IPIC alleges that the Spanish contractors placed orders with "[Corp. EG], RPI and/or one of the other affiliates" for new pumps, and that "the Minatitlán project was largely supervised and managed by [Elizondo], and certain of the pumps installed in connection with the Minatitlán project were designed or manufactured with assistance from RPI in its facilities in Tulsa, Oklahoma."[7] Dkt. # 21, at 8. On June 29, 2005, RPG terminated the 2002 representative agreement, allegedly at the direction of Corp. EG or one of the Elizondo brothers.[8] Dkt. # 21, at 8. IPIC sued RPG in Germany regarding the 2002 representative agreement. The lawsuit was settled in 2006. The parties dispute the scope of the settlement, but agree that it did not cover claims for commissions arising out of the Minatitlán project.

IPIC alleges that Corp. EG and RPI have refused to pay "commissions due." Id. IPIC alleges that Corp. EG has "breached its contractual obligations to IPIC" by failing to pay commissions. Id. at 9. IPIC also brings claim for quantum meruit and unjust enrichment against both defendants. Id. at 9-10.

---

[6]  The copy signed by IPIC has the word "no" and "IPIC take [sic] exception to this paragraph until further discussions" written in several places. Dkt. # 12-2.

[7]  At the hearing, Elizondo testified that RPI (and its predecessor) did not manufacture any pumps associated with IPIC's efforts regarding the Minatitlán project. He stated that RPI pumps were used in the Minatitlán project through Samsung in England and Korea. He also testified that WDM occasionally buys "buyout" parts from RPI.

[8]  IPIC alleges that Elizondo's brother, Ceasar A. Elizondo Garza, "and his family owned a controlling interest in [Corp. EG] and the various Ruhrpumpen affiliates and subsidiaries." Dkt. # 21, at 4.

4

## II.

Corp. EG filed a motion to dismiss based on <u>forum non conveniens</u> and lack of personal jurisdiction. Dkt. # 38. Corp. EG argues that Mexico is the more convenient forum in which to litigate this case. <u>Id.</u> at 5. Corp. EG argues that Mexican law applies to this case, and that the public and private factors of the <u>forum non conveniens</u> analysis favor dismissal. Corp. EG also argues that this Court cannot exercise personal jurisdiction over it in this matter. IPIC disagrees. IPIC stresses that Corp. EG seeks to force IPIC to litigate its claims in two fora: the claim against Corp. EG in Mexico, and the claim against RPI in this Court.[9] Dkt. # 46, at 6. IPIC argues that Corp. EG has not met its burden to show that Mexico is an adequate alternative forum, in particular because a Mexican court would not have personal jurisdiction over RPI. <u>Id.</u> at 11. IPIC further argues that Oklahoma law applies to the entire dispute. <u>Id.</u> at 14. Last, IPIC argues that the private and public interest factors favor litigation in this Court. <u>Id.</u> at 15-18.

As a preliminary matter, the Court must address the scope of the claims asserted in this case. At the hearing, IPIC's counsel suggested that IPIC seeks to recover commissions on projects unrelated to the Minatitlán project. Counsel referred to a list of thirteen alleged projects (only some of which had been awarded or completed) located throughout the world. However, IPIC's amended

---

[9] This argument is unavailing because the doctrine of <u>forum non conveniens</u> applies to cases, not to particular claims or defendants. <u>See</u> <u>infra</u>.

complaint references no projects other than Minatitlán.[10]  See Dkt. # 21.  The Court's previous Opinion and Order denying defendants' motion to dismiss the first amended complaint (Dkt. # 29) described the parties' dispute as relating to the Minatitlán project only.  Until the hearing on December 14, IPIC did nothing to alter the Court's understanding that this dispute was over commissions associated with the Minatitlán project.  The Court considers those claims alleged in the amended complaint only, which relate to the Minatitlán project.

### III.

In a diversity action, federal courts apply the federal law of forum non conveniens. Rivendell Forest Prods, Ltd. v. Canadian Pacific Ltd., 2 F.3d 990, 992 (10th Cir. 1993).  The doctrine of forum non conveniens allows a federal district court to dismiss an action "on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007).  The defendant has the burden of showing that the doctrine applies.  A "defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." Id. at 423.  However, when the "plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is then 'less reasonable.'" Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)); see also Gschwind v. Cessna

---

[10]  Count I of the amended complaint is for breach of contract.  Dkt. # 21, at 9.  The only document that could possibly be a contract between IPIC and Corp. EG is the 2005 letter, which related to the Minatitlán project only.  Dkt. ## 12-2; 46, at 27-29.  Count II of the amended complaint seeks "reasonable compensation for the services [IPIC] provided in connection with the Minatitlán project," and no other project.  Dkt. # 21, at 9-10.  Count III alleges that "defendants have unjustly refused to fully compensate [IPIC] for the services provided and the benefits it conferred." Id. at 10.  IPIC does not specifically identify these services or benefits.  However, the only services and benefits mentioned in the amended complaint are those related to the Minatitlán project.

6

Aircraft Co., 161 F.3d 602, 606 (10th Cir. 1998) (a "foreign plaintiff's choice of forum . . . warrants less deference"). A district court may address forum non conveniens without first determining that it has jurisdiction over the case. Sinochem, 549 U.S. at 425.

There are two threshold inquiries in the doctrine of forum non conveniens:

[F]irst, whether there is an adequate alternative forum in which the defendant is amenable to process . . . and second, whether foreign law applies . . . . If the answer to either of these questions is no, the forum non conveniens doctrine is inapplicable. If, however, the answer to both questions is yes, the court goes on to weigh the private and public interests bearing on the forum non conveniens decision.

Gschwind, 161 F.3d at 605-06 (citations omitted).

First, the court must determine whether an adequate alternative forum exists. Piper Aircraft, 454 U.S. at 255; see also Gschwind, 161 F.3d at 606 ("defendant bears the burden of proving that an adequate alternative forum exists"). "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft, 454 U.S. at 255 (quoting Gulf Oil Co. v. Gilbert, 330 U.S. 501, 507 (1947)). Often, the defendant invoking forum non conveniens consents to jurisdiction in the suggested alternate forum.[11] See Gschwind, 161 F.3d at 606. Even if a defendant consents to jurisdiction, the alternative forum is not adequate if it is "clearly unsatisfactory." Piper Aircraft, 454 U.S. at 255. For example, a foreign forum is not adequate if it "does not permit litigation of the subject matter of the dispute." Id.

---

[11]   A district court may also condition its forum non conveniens dismissal on the defendant's submission to jurisdiction in the foreign forum and that forum's acceptance of jurisdiction. See, e.g., Gschwind, 161 F.3d at 607 (upholding the district court's dismissal where it was "conditioned . . . on Defendants' consent to have the action reinstated in the District of Kansas if the French courts refuse jurisdiction").

Defendants stipulated that they would consent to the territorial jurisdiction[12] of a Mexican court. IPIC raised concerns that a Mexican court might, nevertheless, refuse to exercise jurisdiction. This concern can be alleviated by the inclusion of a return jurisdiction clause in a forum non conveniens dismissal. See supra; cf. Gscwhind, 161 F.3d at 607 (upholding a forum non conveniens dismissal which was conditioned on defendants' consent to have the action reinstated in the district court if the foreign court refused jurisdiction). Subject to this condition, the Court finds that Mexico is an available forum for this dispute.

Mexico is also an adequate forum. Both IPIC's and defendants' Mexican law experts testified that Mexico recognizes causes of action for breach of contract, unjust enrichment, and quantum meruit. While IPIC raised several concerns about the Mexican courts and legal system that are relevant to the public and private interest factors discussed supra, these concerns do not show that Mexico is "clearly unsatisfactory," and therefore, inadequate. Piper Aircraft, 454 U.S. at 255. The Court finds that the first threshold inquiry is satisfied: Mexico is an available and adequate alternative forum.[13]

---

[12] Territorial jurisdiction is analogous but not identical to the American concept of personal jurisdiction.

[13] This conclusion is supported by the fact that federal courts routinely find that Mexico is an adequate forum for forum non conveniens purposes. See, e.g., Loya v. Starwood Hotels & Resorts Nationwide, Inc., 583 F.3d 656 (9th Cir. 2009) (breach of contract and wrongful death claims); In re: Ford Motor Co., 580 F.3d 308 (5th Cir. 2009) (conditioning dismissal on Mexican court's acceptance of jurisdiction); DTEX, LLC v. BBVA Bancomer, S.A., 508 F.3d 785 (5th Cir. 2007); Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665 (5th Cir. 2003) (finding that Mexico was an available and adequate forum, but also finding that the district court's failure to include a return jurisdiction clause was an abuse of discretion); Gonzalez v. Chrysler Corp., 301 F.3d 377 (5th Cir. 2002); Navarrete De Pedero v. Schweizer Aircraft Corp., 635 F. Supp. 2d 251 (W.D.N.Y. 2009).

The second threshold inquiry is whether foreign law applies. If domestic law applies, <u>forum non conveniens</u> is inapplicable. <u>Gschwind</u>, 161 F.3d at 605; <u>Rivendell</u>, 2 F.3d at 993 n.4. A federal district court assessing <u>forum non conveniens</u> in a diversity case applies the choice of law rules of the state in which it sits. <u>Piper Aircraft</u>, 454 U.S. at 244 (citing <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941)).

Corp. EG incorrectly states that Oklahoma would use the "significant relationship test" to determine choice of law in this case. Dkt. # 38, at 7. In fact, Oklahoma looks to the place of contract performance or formation to determine choice of law in a breach of contract action. OKLA. STAT. tit. 15, § 162; see also <u>Harvell v. Goodyear Tire and Rubber Co.</u>, 164 P.3d 1028, 1033-34 (Okla. 2006). The place of performance under the 2005 letter (if a contract) would have been Spain or Mexico, not Oklahoma.[14] The letter contemplates a relationship between Spanish and Mexican companies, relating to purchase orders issued by Spanish engineering companies for a Mexican project. Oklahoma's only relation to this letter is the fortuity that Elizondo sent it to Mottahedeh while in Tulsa, and the fact that some pumps covered by the agreement could potentially be manufactured in Oklahoma. Under either the place of performance or most significant relationship tests, foreign law would apply to IPIC's breach of contract claim, which is based on the 2005 letter.

Neither party has addressed what law applies to IPIC's quasi-contract claims for quantum meruit and unjust enrichment. In an unjust enrichment action, Oklahoma looks to the law of the

---

[14] The 2002 agreement between IPIC and RPG is governed by German law. The contract states that it shall be governed by German law, and neither party has argued that the choice of law provision is unenforceable. Further, the place of performance under the 2002 agreement was Spain or Germany, not Oklahoma. There may be an issue, which could be governed by German law, in this case regarding the scope of the settlement of the prior German litigation between IPIC and RPG. See supra.

9

state where services were rendered.[15]  Harvell, 164 P.3d at 1036.  It appears from the record that IPIC rendered services in Spain or Mexico, but not in the United States.  IPIC does not allege that it did any promotion or procurement of purchase orders in the United States, or that it solicited any American customers for Ruhrpumpen products.  See Dkt. # 21.  Even if pumps procured through IPIC's efforts in connection with the Minatitlán project were manufactured by RPI in Oklahoma,[16] this fact would not change the choice of law analysis for IPIC's quasi-contract claims, because it would not show that IPIC rendered any services in the United States.  IPIC allegedly promoted

---

[15]   The Court is not aware of any Oklahoma authority stating the choice of law principles applicable to quantum meruit actions.  Oklahoma would likely apply the same principles to quantum meruit claims as those for unjust enrichment. The two are similar theories of recovery.  See Am. Automated Theaters, Inc. v. Hudgins, Thompson, Ball & Assocs., Inc., 516 P.2d 565, 568 (Okla. Civ. App. 1973) (Brightmire, P.J., concurring) ("'[q]uantum meruit' is but a restricted application (to labor and service performance) of the moral philosophy underlying the equitable doctrine of 'unjust enrichment'").  The Tenth Circuit has stated that lex loci contractus is the appropriate choice of law principle by which to analyze "implied contract claims" in an Oklahoma forum.  Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1178 (10th Cir. 2009) (determining that Swiss law would govern a foreign plaintiff's fraud and breach-of-implied contract claims).  Courts in other circuits have applied the forum state's contract choice of law analysis to quantum meruit claims.  See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2nd Cir. 2001) (applying New York choice of law principles); Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech., 299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004) ("under Maryland choice-of-law rules a contractual claim (including a claim for quantum meruit or unjust enrichment) is governed by the law of the place where the contract is made"); In re Managed Care Litigation, 298 F. Supp. 2d 1259, 1297 (S.D. Fla. 2003) (stating that contract choice of law rules "should apply to quantum meruit and violation of prompt pay and consumer protection statutes").  But see Overseas Dev. Disc Corp. v. Sangamo Constr. Co., 686 F.2d 498, 511 (7th Cir. 1982) (applying the Restatement (Second) of Conflict of Laws's "most significant relationship" test to a restitution action because "a quantum meruit claim does not sound in contract, but in restitution").  Nonetheless, the result of the choice of law analysis is the same under the "most significant relationship" test.  See Harvell, 164 P.3d at 1036 (determining that the result would be the same under either lex loci contractus or the most significant relationship test because "any representations [relied upon] and any enrichment received occurred in the state where the services were rendered").

[16]   The evidence does not tend to show that this is the case.

Ruhrpumpen products to Spanish contractors in connection with a Mexican project. The place where those products were eventually manufactured is irrelevant to determining the place where IPIC rendered services. IPIC's services were promotion-related. Mexican or Spanish law applies to IPIC's quasi-contract claims, because IPIC rendered services in Mexico or Spain. Therefore, the second threshold inquiry is satisfied: foreign law applies to all the claims in this dispute.

After the two threshold inquiries are satisfied, "the court goes on to weigh the private and public interests bearing on the forum non conveniens decision." Gschwind, 161 F.3d at 606.

> The factors pertaining to the private interests of the litigants included the 'relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gilbert, 330 U.S. at 509) (citations omitted). Ordinarily, the defendant bears a heavy burden to show that these factors "clearly point towards trial in the alternative forum." Id. at 255. However, when the plaintiff is foreign, "the private and public interest factors need not so heavily favor the alternate forum." Gschwind, 161 F.3d at 606.

A.   Private Interest Factors

The private interest factors relate to the litigants' convenience. Piper Aircraft, 454 U.S. at 241. They are:

> the 'relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action;

and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

Id. at 241 n.6.

Corp. EG asserts that "plaintiff identifies no witnesses who reside in Oklahoma"[17] and that "Corp. EG would incur greater expense for having to defend this suit in Oklahoma" while "Plaintiff would incur no greater expense by litigating in a Mexican court." Dkt. # 38, at 8-9. To prevail, defendants must demonstrate more than the simple fact that it would be more expensive for them to litigate in Oklahoma than in Mexico; they must demonstrate that litigation in Mexico is more convenient, taking the costs to all parties in to account.

IPIC does not dispute that "some of the documents relating to the Minatitlán Project, as well as other projects to which IPIC may be entitled to a commission, may be physically located in Mexico . . . ." Dkt. # 46, at 16. However, IPIC asserts that "the vast majority of the communications between IPIC and the representatives of RPI and Corp. EG were sent to and from RPI's offices in Tulsa, Oklahoma." Id. The fact that communications were sent from Tulsa does not, by itself, make it any more or less convenient to produce those communications as evidence in Oklahoma or Mexico.[18] The source of the communications is particularly irrelevant if the communications are e-mails stored in easily transportable electronic format. Corp. EG's relevant records are located in Mexico, and any of RPI's relevant records could be easily transported to Mexico.[19]

---

[17]   This assertion is unhelpful because the defendants bear the burden to show that litigating in Oklahoma is inconvenient.

[18]   IPIC incorrectly conflates contacts relevant to personal jurisdiction with facts relevant to forum non conveniens.

[19]   Inconvenience could be avoided by conditioning a forum non conveniens dismissal on the parties' consent to make documents available in a Mexican proceeding.

12

The Minatitlán project is located in Mexico. To the extent that inspection of the project itself might be helpful, this fact weighs in favor of litigation in Mexico. If there is truly a dispute over whether pumps made by RPI were included in the project, and by whom, then inspection of the premises in Mexico could be helpful.

There will be language barriers no matter where this case is litigated. The documents relevant to this matter are in multiple languages, including English and Spanish.[20] At the hearing, defendants identified several potential witnesses who speak Spanish, but little or no English. IPIC identified two potential witnesses who speak English, but may not speak Spanish. This factor weighs slightly in favor of litigating in Mexico, as there are more witnesses who speak mainly Spanish than who speak mainly English.[21]

The convenience and cost of travel favors litigation in Mexico. Elizondo splits his time between Oklahoma and Mexico. However, the majority of defendants' other relevant witnesses are located in Mexico. It would therefore be more convenient and efficient for them to testify in Mexico. Mottahedeh will have to travel a long distance whether the case is litigated in Oklahoma or in Mexico, as he resides in Spain. Elizondo testified that there are non-stop flights between Madrid, Spain and Mexico City, Mexico, and that he believed there were non-stop flights between

---

[20]   Elizondo testified that most of the e-mails relevant to this matter are in Spanish. Mottahedeh testified that he communicated with the Ruhrpumpen entities primarily in English.

[21]   The majority of potential witnesses speak Spanish as their primary language.

Madrid and Monterrey, Mexico. The Court finds that the fewest people would be inconvenienced by litigating this case in Mexico.[22]

One major difference between the American federal and Mexican legal systems is the availability of certain discovery and evidentiary tools. The Mexican system does not permit depositions. Therefore, the parties would have to rely on written interrogatories, requests for admission, and documentary evidence if the case were brought in Mexico. This factor favors litigation in the United States. However, the Court finds that this inconvenience is outweighed by other private interest factors that make Mexico the more convenient forum in which to litigate this dispute.

The Mexican forum has an additional advantage: if IPIC were to bring its case in Mexico, it could join WDM as a defendant.[23] It appears from the record that WDM was significantly involved in the Minatitlán project. In fact, defendant stated that WDM received orders for the Minatitlán project from one of the Spanish contractors with which IPIC was involved. WDM may have far more involvement than RPI with any commissions allegedly owed to IPIC. Joinder of WDM would promote the efficient resolution of the entire dispute between IPIC and the Ruhrpumpen entities. For these reasons, the Court finds that the private interest factors weigh in favor of litigation in Mexico.

---

[22]   IPIC expressed concerns about safety in Mexico. The Court is well aware of the dangers associated with travel near the United States-Mexico border. However, the situation appears to be less dangerous in areas like Monterrey, where IPIC would presumably bring a case should it choose to litigate in Mexico. The Court finds that IPIC's safety concerns, while legitimate, do not tip the balance away from Mexico as the more convenient forum in this case.

[23]   IPIC has not attempted to join WDM in this case; it is unlikely that this Court would have personal jurisdiction over WDM.

B.     Public Interest Factors

The public interest factors are:

the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gilbert, 330 U.S. at 509) (citations omitted).

A court analyzing the first factor must compare the docket congestion in the forum with congestion in the defendant's suggested alternate forum. See Mercier, 981 F.2d at 1357-58 (discussing the district court's determination that the case would be resolved more quickly in Turkey than in the District of Massachusetts). Neither party offered evidence that either set of courts is more congested than the other. IPIC's Mexican law expert testified that the Mexican courts are not particularly congested. The Court finds that this factor weighs in neither party's favor.

Corp. EG argues that the application of Mexican law and potential Spanish language barriers would pose substantial administrative difficulties for this Court. Dkt. # 36, at 9. Although a court's difficulty in applying foreign law "cannot be dispositive where the balance of factors demonstrates that the plaintiff's choice is an appropriate one," Gschwind, 161 F.3d at 609, it may be "one of several factors 'counseling dismissal,'" Mercier, 981 F.2d at 1357. See also Piper Aircraft, 454 U.S. at 251 ("the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself"") (quoting Gilbert, 330 U.S. at 509). The Court has found that Mexican, Spanish (and possibly German) law may apply to various aspects of this dispute. See supra. The Court would apply no domestic substantive law in this case. However, if this case were to proceed in Mexico, there is a greater chance that at least some of the

15

applicable law would be the domestic law of the forum. Although this factor is not dispositive, the Court finds that the difficulties in applying foreign law favor litigation in Mexico.

Corp. EG argues that "[n]either the Oklahoma judicial system nor any of its potential jurors and judicial officers share the strong local interest that a foreign court and the parties and the citizens of their countries have in the proper application of the contract law controlling Plaintiff's claims." Dkt. # 38, at 9. IPIC counters that "potential jurors [in Oklahoma] would seemingly have a strong local interest in ensuring that companies (both local and foreign) that transact business within this state do so in a lawful manner . . . ." Dkt. # 46, at 18. It is difficult to see how Oklahoma has an interest in providing redress to a Spanish corporation relating to business interests in Mexico and Europe. IPIC's relationship with Corp. EG and RPI concerns business ventures outside the United States. IPIC's assertion that the parties "transact[ed] business" within Oklahoma is tenuous at best, and does not provide evidence of Oklahoma's interest in this case. Oklahoma does not have a strong interest in a contract or quasi-contract action merely because the relationship was partially negotiated within the state or benefitted a local company.[24] IPIC's assertions are nothing more than an effort to bootstrap the fortuities of Elizondo's presence in Tulsa and the existence of an Oklahoma subsidiary of Corp. EG into an argument for Oklahoma's interest in the case. "[T]he nub of the controversy" is entirely outside Oklahoma. Sinochem, 549 U.S. at 428. Mexico has a stronger interest than the United States in this case. One of the defendants is a Mexican corporation.[25] The dispute involves alleged commissions due on a project in Mexico, run by the

---

[24]  Further, the evidence does not tend to show that a significant portion of the parties' negotiations or business interactions took place in Oklahoma. For example, Elizondo traveled to Spain to meet with Mottahedeh.

[25]  If the case were to proceed in Mexico, another Mexican defendant, WDM, could be added.

16

Mexican state-owned oil company. The Court finds that this factor weighs in favor of litigation in Mexico.

The public's interests relating to jury service are not relevant in this case. Mexico does not conduct jury trials in civil cases,[26] so no person in Mexico would be asked to serve on a jury in this case. At the hearing, defendants' counsel questioned IPIC's Mexican law expert about the relevance of Mexico's lack of civil juries by asking "in this case, the plaintiff has not demanded a jury, so that wouldn't make any difference, would it?" IPIC has not demanded a jury trial in this case. However, defendants' counsel's question was somewhat misleading, as defendants demanded a jury trial in their answer to the amended complaint. See Dkt. # 30. However, since defendants now seek to dismiss the case in favor of a Mexican forum, they cannot argue that the lack of a jury trial in Mexico is relevant. This factor weighs in neither party's favor.

The Court finds that the public and private interest factors weigh in favor of litigation of this dispute in Mexico, rather than in Oklahoma. The Court finds that dismissal on the basis of <u>forum non conveniens</u> is appropriate, subject to certain conditions. <u>See</u> <u>infra</u>. Therefore, the Court need not address the remainder of Corp. EG's motion, which concerns personal jurisdiction.

**IT IS THEREFORE ORDERED** that Defendant Corporación EG S.A. de C.V.'s Motion to Dismiss and Brief in Support (Dkt. # 38) is **granted**. IPIC's first amended complaint (Dkt. # 21) is **dismissed** pursuant to the doctrine of <u>forum non conveniens</u>; provided, however, that this dismissal shall be subject to the following conditions:

---

[26] This difference does not render Mexico an inadequate forum. The lack of a jury in a civil case does not make Mexico's system "clearly unsatisfactory," especially given the fact that IPIC did not demand a jury trial in this case. <u>See</u> <u>infra.</u>

17

1. Should plaintiff wish to bring suit in Mexico, plaintiff shall initiate a lawsuit within 120 days in an appropriate Mexican court;

2. Defendants shall timely consent to the jurisdiction of that court;

3. Defendants shall waive any statute of limitations defenses that accrued subsequent to the date of the initiation of IPIC's suit in this Court;

4. Defendants shall make available for use in the Mexican court any discovery materials available in this Court;

5. Should a case in Mexico proceed to judgment, neither defendant will contest that court's jurisdiction or ability to render a judgment; and

6. If, through no fault of plaintiff, the Mexican court refuses jurisdiction, IPIC may re-file its first amended complaint (Dkt. # 21) in this Court.

A separate judgement is entered herewith.

**DATED** this 17th day of December, 2009.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT